FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 07 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JEREMY WILSON,

                      Plaintiff,

-against-

CITY OF NEW YORK, et al.,

                      Defendants.
-----------------------------------------------------------------X

06-CV-0229 (ARR) (VVP)

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Plaintiff, Jeremy Wilson, brings this suit under 42 U.S.C. § 1983 and New York law, alleging false arrest, malicious prosecution, excessive detention, illegal search and seizure, and recklessness against defendants the City of New York ("New York City"), Police Detectives Seth Layne ("Layne") and Christopher Seibold ("Seibold"), and Police Lieutenant James A. West ("West"). On May 27, 2010, the court issued an opinion and order granting defendants summary judgment on plaintiff's malicious prosecution, excessive detention, illegal search and seizure, recklessness, and Monell claims, and denying both parties' motions for summary judgment on the false arrest claims. The court is now faced with two motions for reconsideration of that decision. Both parties argue that the court overlooked applicable law and key facts that necessitate their being awarded summary judgment on the false arrest claim. For the reasons set forth below, the court grants in part and denies in part defendants' motion, and denies plaintiff's motion.

1

## DISCUSSION

A. <u>Facts</u>

Familiarity with the underlying facts is presumed. The court directs the parties to the statement of facts in its May 27, 2010 opinion and order.

B. <u>Legal Standard</u>

Pursuant to Local Civil Rule 6.3, a party seeking reconsideration must "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked." "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters . . . that might reasonably be expected to alter the conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995); <u>see</u> <u>E.E.O.C. v. Fed. Express Corp.</u>, 268 F. Supp. 2d 192, 195 (E.D.N.Y. 2003) (holding that Local Rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court"). Whether or not to grant a motion to reconsider "is within the sound discretion of the district court," <u>E.E.O.C.</u>, 268 F. Supp. 2d at 195, but it "should not be granted where the moving party seeks solely to relitigate an issue already decided." <u>Shrader</u>, 70 F.3d at 257. Rather, "reconsideration allows a court to correct for clear error, to prevent manifest injustice, or to review in the light of newly available evidence." <u>Asia Project Servs. Ltd. v. Usha Martin Ltd.</u>, No. 09-CV-5084, 2010 WL 1644891, at *1 (S.D.N.Y. Apr. 8, 2010).

C. <u>Analysis</u>

In the May 27, 2010 opinion and order, the court held that material issues of fact precluded granting summary judgment to either party on the false arrest claim. The court found

that although Detective Layne had probable cause to arrest plaintiff on March 11, 2003 when he "formally" arrested plaintiff at the precinct, plaintiff was arrested for purposes of the false arrest claim prior to that "formal arrest" and the court could not determine based on the record at what time plaintiff was arrested and if the arrest was supported by probable cause.

The court explained:

> Genuine issues of material fact preclude summary judgment on the false arrest claims. Here, it is not possible to assess whether the circumstances confronting police officers justified plaintiff's arrest because a genuine issue of fact exists as to the timing of plaintiff's arrest and the circumstances under which it was effected. Despite the voluminous materials before the court, the parties did not develop the record regarding what happened to plaintiff once officers responded to the Arcade. The record does not establish with certainty when plaintiff's arrest took place, who placed him in handcuffs at the Arcade, why he was handcuffed, under what circumstances he was transported to the police precinct, or why he was transported to the precinct. As described in more detail below, if a jury were to credit plaintiff's deposition testimony, it would likely conclude that plaintiff was arrested at the Arcade when an unidentified police officer handcuffed him, and the arresting officer had probable cause to arrest him. If, however, a jury were to credit the testimony and police reports of Chung, Seibold, and Massanova, as well as plaintiff's testimony regarding his transport to the precinct and treatment at the precinct, it would likely conclude that plaintiff was initially subjected to investigatory detention, which, at some point, ripened to a de facto arrest prior to the development of probable cause.

Wilson, No. 06-CV-229, at 27 (E.D.N.Y. May 27, 2010) (hereinafter Wilson, May 27 Opinion) (internal citations omitted). The court also denied defendants' motion for summary judgment on qualified immunity grounds because of the material facts in dispute regarding what happened to plaintiff and what was known by police officers in the early morning hours of March 9, 2003. See Wilson, May 27 Opinion, at 39-40 (citing Curry v. City of Syracuse, 316 F.3d 324, 334-35 (2d Cir. 2003) (summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain); Mickle v. Morin, 297 F.3d 114, 122 (2d

3

Cir. 2002) (where the circumstances are in dispute, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity); McKelvie v. Cooper, 190 F.3d 58, 63 (2d Cir. 1999) ("Where, as here, there are facts in dispute that are material to a determination of reasonableness, summary judgment on qualified immunity grounds is not appropriate."); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (holding summary judgment is only appropriate if no dispute exists "as to the pertinent events and the knowledge of the officers")).

Defendants contend that the court erred in denying defendants Layne and Seibold summary judgment on the false arrest claim because plaintiff's deposition testimony that when police officers arrived at the Arcade "[t]hey placed me in handcuffs because the security guard told him I was the shooter," establishes probable cause, or, at a minimum, arguable probable cause to arrest plaintiff. See Wilson Dep. at 87. Plaintiff, on the other hand, contends that the court erred in denying plaintiff summary judgment on the false arrest claim because plaintiff's deposition testimony, if credited by a jury, is insufficient to establish probable cause for his arrest.

The court has carefully reviewed and considered both motions for consideration. Both motions repeat arguments that were previously considered by the court, and on the issue of whether or not the record establishes probable cause to arrest plaintiff, neither party has pointed to any factual or legal matter that could change the disposition of the motion for summary judgment. Upon review, I adhere to my prior ruling that genuine issues of material fact preclude summary judgment in favor of either party on the false arrest claim. However, for the reasons described below, on reconsideration I conclude that Detective Seibold is entitled to summary judgment on the basis of qualified immunity. I briefly address each motion below.

1. <u>Defendants' Motion for Reconsideration</u>

Defendants contend, as they did in their initial papers, that police officers had probable cause to arrest plaintiff, no matter what time he was arrested, because upon arrival at the scene of the crime a police officer was told by an Arcade security guard that plaintiff was the shooter. Defendants contend that this fact – a police officer was told by a security guard that plaintiff was the shooter – is definitely and unambiguously established by two statements made by plaintiff during his deposition. They rely on plaintiff's testimony that when police officers first arrived at the Arcade "[t]hey placed me in handcuffs because the security guard told him I was the shooter." See Wilson Dep. at 87. They also rely on plaintiff's answer to the question "did this police officer say anything to you before he placed you in handcuffs," that "[n]o, because – right away the security told him I was the shooter." See Wilson Dep. at 88. In their memoranda, defendants acknowledge the existence of disputed facts with respect to the first part of plaintiff's two statements of testimony, that police handcuffed plaintiff upon their arrival at the scene.[1] But defendants assert that the court must read the second part of these statements of plaintiff's testimony in isolation and find that it is a fact that "the security guard told [the police officer] [that plaintiff] was the shooter" because no other evidence in the record explicitly contradicts this statement by plaintiff and because plaintiff's testimony is credible since he is in the best position to remember what happened to him at the Arcade. See Wilson Dep. at 87.

---

[1] Detective Seibold documented in his complaint follow-up report ("DD-5"), prepared immediately after he interviewed plaintiff at the Arcade, that plaintiff said that "he was . . . handcuffed by club security[.]" See Seibold DD-5; Seibold Dep. at 16. In addition, Detective Seibold testified in a May 24, 2005 hearing in plaintiff's state court criminal case that plaintiff had been handcuffed by Arcade security guards. See Seibold <u>Huntley</u> Hrg. Tr. at 37, 52; Seibold Dep. at 30-31, 55-56, 59.

5

In urging the court to make the factual finding that a police officer was told by a security guard that plaintiff was "the shooter," the defendants ignore well-settled law prohibiting the court, on a motion for summary judgment, from resolving factual disputes, making credibility determinations, or choosing between conflicting versions of the events. See Zellner v. Summerlin, 494 F.3d 344, 370 (2d Cir. 2007); Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). In deciding a motion for summary judgment the court must review "the pleadings, the discovery and disclosure materials on file" and may not render judgment if there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c). In addition, in deciding a motion for summary judgment the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008). The moving party must demonstrate that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the nonmoving party's favor. See Jeffreys, 426 F.3d at 554.

On defendants' motion, the court must construe the evidence in the light most favorable to plaintiff, and it is defendants' burden to demonstrate that no reasonable factfinder could find for the plaintiff. Reviewing the record currently before the court, I cannot find that defendant has satisfied this standard. The muddled record as a whole raises considerable doubt about whether a security guard in fact informed a police officer that plaintiff was the shooter. As an initial matter, the court cannot read two half sentences of plaintiff's deposition testimony in isolation. Because there is considerable evidence in the record to raise doubts that a police officer handcuffed plaintiff at the Arcade, there is necessarily reason for the jury to doubt the second part of

6

plaintiff's sentences of testimony, which flowed directly from his assertion that police handcuffed him.

Of more significance, a reasonable juror could find on this record that no officer treated plaintiff as if an eyewitness had identified him as "the shooter," which provides good reason for the juror to doubt plaintiff's assertions. Plaintiff testified that it was immediately upon police arrival at the Arcade that police were told by a security guard that plaintiff was "the shooter." Yet, according to the record, plaintiff was held at the scene until 4:00 or 5:00 a.m., for possibly more than two hours after the first officers arrived. If police had been informed by an eyewitness security guard that plaintiff was "the shooter" responsible for the incident, it is unlikely that police would have kept plaintiff at the crime scene for two hours while they investigated the incident. It is also unlikely that, when finally taken to the police precinct, plaintiff would have been placed on a hallway staircase until he could be moved to a room. Additionally, if around 2:40 a.m. when police officers first arrived at the scene an officer had been told that plaintiff was "the shooter," it is unlikely that Detective Seibold would have been tasked with conducting a basic interview of plaintiff to assess his involvement and it is unlikely that Detective Seibold would have left plaintiff on the dance floor monitored solely by Arcade security guards rather than police officers at the completion of the interview. Rather, if police officers had received eyewitness information that plaintiff was "the shooter," there is at least some likelihood that plaintiff would have been taken into more secure custody at the scene, and it is probable that detectives tasked with interviewing plaintiff would have been informed that he was the suspected shooter, and plaintiff would have been read <u>Miranda</u> rights before he was questioned. Furthermore, if police had been informed by a security guard that plaintiff was the shooter, the

police likely would have taken a statement from the eyewitness security guard or at least recorded the name of the security guard who witnessed the shooting so that the witness could be contacted in the future. But the record before the court contains no police documentation of this security guard statement. Finally, on March 9, the day of the shooting, the Commanding Officer of the Midtown South Precinct issued a report detailing that Justin Wilson and Jermont Williams had been arrested as the suspected shooters following the police's preliminary investigation. The fact that mere hours after the shooting plaintiff was not considered by the police as a suspected "shooter," suggests that upon a review of the entire record, a reasonable juror could conclude that no security guard ever told a police officer that plaintiff was "the shooter," as an eyewitness statement of this nature would have been seriously considered. The actions by the police could reasonably suggest the conclusion that no police officer was ever informed by a security guard that plaintiff was "the shooter."[2]

In addition, when considering defendants' motion, the court must draw all inferences in the plaintiff's favor. Plaintiff's deposition testimony that "the security guard told [the arresting police officer] I was the shooter," is arguably ambiguous in its meaning and significance. From

---

[2] As noted in the May 27, 2010 opinion and order, Sergeant Chung's testimony that a patrol supervisor told him fifteen minutes after he arrived at the scene that Arcade security guards were holding two individuals who they believed were "involved" in the shooting does not establish probable cause to arrest plaintiff. Therefore, defendants cannot rely on Sergeant Chung's testimony to establish probable cause for plaintiff's arrest, whether it occurred at the Arcade or at the precinct. After receiving information about two individuals' suspected involvement, without doing any further investigation to find out the nature of the suspected involvement and the basis for the belief that two individuals were involved, Sergeant Chung did not have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that [plaintiff] has committed . . . a crime." See Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). The court will not reach the issue of whether the information relayed to Sergeant Chung provided reasonable suspicion for a Terry stop.

the statement, the factfinder might well question whether the security guard told the police officer that he had personally witnessed the defendant shoot the gun, and, if so, might also question the identity of the source of the security guard's information. On defendants' motion, drawing all inferences in favor of the plaintiff, it would be reasonable to infer that the security guard never told the arresting officer how he knew that plaintiff was the shooter, suggesting that the statement is not, and does not even imply, a reliable eyewitness statement as defendants' suggest. These reasonable inferences would support the conclusion that this statement by the security guard is alone insufficient to constitute probable cause for his arrest.

The Second Circuit has held that a determination of whether probable cause to arrest existed may be made "as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852. "Where there is conflicting evidence as to whether probable cause existed, however, the decision should be made by a jury." Douglas v. City of N.Y., 595 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (citing Wu v. City of N.Y., 934 F. Supp. 581, 588 (S.D.N.Y. 1996)). Because on this record a jury could doubt the accuracy of plaintiff's deposition statements that a security guard told a police officer that he was the shooter and could also reasonably infer that the security guard was not himself an eyewitness to the shooting, the jury must weigh this conflicting evidence and determine if plaintiff's arrest was supported by probable cause.

2. <u>Plaintiff's Motion for Reconsideration</u>

Plaintiff contends that the court erred in denying plaintiff summary judgment on the false arrest claim because the admissions in plaintiff's deposition testimony, if credited by a jury, are insufficient to establish probable cause for his arrest. Plaintiff argues that the burden of

establishing probable cause to arrest is on the defendants, and defendants cannot establish the existence of probable cause simply by relying on plaintiff's deposition testimony.

Plaintiff's argument fails for the same reasons that defendants' argument fails. To be entitled to summary judgment on his false arrest claim, it must be indisputable that plaintiff's confinement was not "otherwise privileged." See, e.g., Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); Posr v. Doherty, 944 F.2d 91, 97 (2d Cir. 1991). If probable cause for the arrest existed at the time of plaintiff's arrest, his confinement was privileged. See Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003). Plaintiff is not entitled to summary judgment unless, drawing all inferences in favor of the defendants, no reasonable juror could find that plaintiff's confinement was privileged, meaning that no juror could find that defendants had probable cause to arrest plaintiff.

Reviewing the record currently before the court, I cannot find that the evidence indisputably supports only this inference. A reasonable juror could find plaintiff's deposition testimony credible, trustworthy, reliable, and unambiguous, and could find that (1) a security guard told a police officer that plaintiff was "the shooter" and (2) plaintiff was arrested when that police officer handcuffed plaintiff in response to the statement by the security guard that plaintiff was the shooter. Thus, crediting plaintiff's own deposition testimony and drawing all inferences in the defendants' favor, a reasonable juror could conclude that the arresting officer knew the identity of the security guard who provided the account that plaintiff was the shooter, and reasonably believed the security guard had made the accusation against plaintiff based on personal knowledge that plaintiff was the shooter. If credited, those facts support a finding that plaintiff's arrest was based on probable cause because they constitute "reasonably trustworthy

10

information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed" by plaintiff. See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). Furthermore, a reasonable juror could make the finding that plaintiff's testimony is credible because his testimony is somewhat corroborated by Sergeant Chung's testimony that he was aware that Arcade security guards were holding two individuals who they believed were "involved" in the shooting. Plaintiff testified that before police arrived he was held by security guards. Accordingly, because a reasonable juror, after making factual findings and credibility determinations, could find that plaintiff's arrest was supported by probable cause, plaintiff's motion for summary judgment must be denied.

3. Defendants' Qualified Immunity Argument on Reconsideration

Defendants also argue that, at a minimum, Detectives Seibold and Layne are entitled to summary judgment on the basis of qualified immunity. Defendants are not entitled to summary judgment "if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable." Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995). An officer's actions are objectively unreasonable if no reasonably competent officer would have acted the same way under similar circumstances. Id. at 420-21. Immunity should ordinarily be decided by the court "when the facts concerning the availability of the defense are undisputed." Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994). However, if determining the objective reasonableness of the police officers' conduct requires further fact finding, it is appropriate to submit the issue of qualified immunity to the jury. See id.

After further consideration, I adhere to my determination that factual disputes prevent a finding of qualified immunity with respect to Detective Layne. There is no question that

11

Detective Layne was personally involved in plaintiff's detention at the precinct, and in fact, defendants have never asserted as a ground for summary judgment that plaintiff has failed to prove Detective Layne's personal involvement in plaintiff's arrest and detention. Detective Layne testified that he was plaintiff's arresting officer. See Layne Dep. at 15. During his deposition Detective Layne testified that he was responsible both for, as he describes it, "tak[ing] into custody" plaintiff on March 9 at approximately 6 p.m. after he read plaintiff his Miranda rights and plaintiff refused to answer his questions, and for "officially" or "formally" arresting plaintiff on March 11. See Layne Dep. at 62-68. Detective Layne was the assigned case detective who coordinated all police activity related to plaintiff's criminal case from some time on March 9 when he returned to the precinct until the dismissal of the criminal charges against plaintiff two and a half years after the shooting. See Layne Dep. at 15; Defs.' Ex. JJ at 401.

There are genuine issues of material fact in dispute as to the timing of plaintiff's arrest. There are also genuine issues of material fact precluding a finding as to when, if ever, police developed probable cause to arrest plaintiff prior to his formal arrest on March 11. Construing the record in plaintiff's favor, because the evidence reasonably supports the conclusion that (1) police did not develop probable cause to arrest plaintiff for his involvement in the Arcade shootings until his formal arrest on March 11, (2) Detective Layne personally interrogated plaintiff and took plaintiff into custody on March 9 at 6 p.m., and (3) as case detective, Layne was aware of all of the information gathered during the investigation and chose to keep plaintiff in custody knowing a finding of probable cause was not yet warranted, the court cannot conclude as a matter of law that Detective Layne's actions were not objectively unreasonable. Summary judgment on qualified immunity grounds is inappropriate as to Detective Layne because factual

disputes bear directly upon whether Detective Layne was the arresting officer and whether it was objectively reasonable for Detective Layne to believe that he was acting lawfully when he took plaintiff into custody and detained plaintiff until March 11. See Oliveira, 23 F.3d at 650.

On reconsideration, however, the court now finds that Detective Seibold is entitled to qualified immunity. There are no material factual disputes as to Detective Seibold's actions at the Arcade. Detective Seibold arrived at the Arcade around 3:00 a.m. As soon as he arrived, he was instructed by Sergeant Chung to interview plaintiff. Pursuant to that instruction, he approached plaintiff and questioned him for no more than five minutes. Construing the facts in favor of plaintiff, plaintiff was in handcuffs at the time of the interview and Detective Seibold was aware that Arcade security guards were responsible for handcuffing plaintiff. After interviewing plaintiff, Detective Seibold left plaintiff as is, reported to Sergeant Chung what plaintiff had stated, and remained on the scene for approximately one hour for further instructions before returning to his office to prepare a DD-5 report. At the completion of Detective Seibold's questioning of plaintiff, Detective Seibold had not gathered information that led him to believe that plaintiff was, in any way, involved in the shooting or a potential suspect in the shooting. It is also undisputed that Detective Seibold was not the first police officer to interact with and question plaintiff at the scene, as Detective Massanova first questioned plaintiff at 2:45 a.m. while plaintiff was handcuffed.

Detective Seibold is entitled to qualified immunity because it cannot be concluded from the evidence of record that no reasonably competent officer would have acted the same way. The record makes clear that Detective Seibold was asked to perform a duty by his supervisor, performed that duty, and reported to his supervisor for further instructions. In the context of this

level three police mobilization, with between fifty and one-hundred police officers at the Arcade each involved in aspects of the police investigation, the court cannot find that it was objectively unreasonable for Detective Seibold to leave plaintiff handcuffed or to not investigate plaintiff's culpability further even though, based on his one conversation with plaintiff, Detective Seibold had no reason to believe plaintiff was involved in the shooting. The court cannot find it objectively unreasonable for Detective Seibold to instead immediately report to his supervisor what plaintiff had stated and wait for further instructions.

The court has considered plaintiff's argument that even if Detective Seibold was not the arresting officer, he is personally involved and liable for false arrest for failure "to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Braden, 17 F.3d 552, 557 (2d Cir. 1994). In the context of false arrest, the duty to intervene is described as follows: "[A]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that a citizen has been unjustifiably arrested . . . or that any constitutional violation has been committed by a law enforcement official." Id. Furthermore, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent harm from occurring." Id. The court finds that Detective Seibold is entitled to qualified immunity from suit for false arrest on a failure to intervene theory because a reasonable officer in the same situation could have believed that plaintiff was not under arrest at that time since he was being held by security guards and thus had not been "unjustifiably arrested." Furthermore, a reasonable officer in the same situation could have believed that plaintiff had merely been subjected to a Terry stop that was supported by reasonable suspicion. After all, it was Detective Seibold's supervisor,

Sergeant Chung, who was himself aware of evidence developed during the course of the larger investigation, who assigned Detective Seibold to interview plaintiff and report the results to him. A reasonable officer in Detective Seibold's circumstances could believe that by reporting to his supervisor the information he learned from his interview with plaintiff, he was fulfilling his duty to prevent plaintiff's constitutional rights from being violated.

## CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration is granted in part and denied in part and plaintiff's motion for reconsideration is denied. Detective Seibold is granted summary judgment on qualified immunity grounds. The only claims remaining are the § 1983 and state law false arrest claims against Detective Layne. The parties are directed to comply with the discovery and pre-trial order deadlines set by Magistrate Judge Viktor V. Pohorelsky at the June 28, 2010 conference. The parties are reminded that a conference has been scheduled for September 29, 2010 at 10:00 a.m. before Judge Pohorelsky.

SO ORDERED.

s/Allyne R. Ross
Allyne R. Ross
United States District Judge

Dated: September 3, 2010
Brooklyn, New York

SERVICE LIST:

*Attorney for Plaintiff*
David A. Zelman
612 Eastern Parkway
Brooklyn, NY 11225

*Attorney for Defendants*
Michael Chestnov
Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, NY 10007

*Attorney for Interested Party*
Cynthia M. Sittnck
New York County District Attorney's Office
1 Hogan Place
New York, NY 10013

cc: Magistrate Judge Viktor V. Pohorelsky